(No. 20883.—

THE DOWNERS GROVE SANITARY DISTRICT, Appellant, *vs.* THE DOWNERS GROVE INVESTMENT COMPANY, Appellee.

*Opinion filed October 23, 1931.*

DANIEL S. WENTWORTH, and HENRY O. NICKEL, for appellant.

BUNGE & BUNGE, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

On August 12, 1929, there was filed in the county court of DuPage county a petition of the Downers Grove Sanitary District for special assessment proceeding No. 26, based

on "An ordinance for the construction of a sewage treatment works and outlet sewers to conduct sewage from the existing sewers in Cornell avenue to said treatment works, the acquisition of the necessary land, rights and easements for said sewage treatment works and outlet sewers by the Downers Grove Sanitary District," at an estimated expense of $575,000. On December 8, 1930, appellee, the Downers Grove Investment Company, filed its petition in the case representing that said proceeding had been pending in the court for more than two years; that in the assessment roll filed in the proceeding a majority of the lots, blocks and tracts of land situated within the district was assessed for benefits to be derived from the improvement, and that the number of such lots, blocks and tracts of land so assessed was in excess of 9000; that the pendency of such suit constituted a cloud on the title of all said property, and that the firms or individuals who prepare or make abstracts showing title to property in DuPage county correctly show said proceeding in their abstracts of title as affecting the title to each of the pieces of property, and that for the purpose of showing the pendency of such suit an additional charge is made by the title company upon each of the tracts whenever an abstract or continuation thereof is made upon any of said pieces of property; that the market for the sale of real estate within DuPage county, and particularly of property within the Downers Grove Sanitary District, is very slow; that it is difficult to secure persons who are able and willing to purchase such property, and that the pendency of the proceeding, and the showing thereof in abstracts or continuations thereof affecting any of the pieces of property, tend to lessen the chances of the sale thereof; that the petitioner is the owner of a great number of lots, blocks, pieces, parcels and tracts of land within the sanitary district, and that each is affected, in the manner hereinbefore set forth, by the pendency of such special assessment proceeding, and that therefore the petitioner is put to great

expense in the purchasing of abstracts and continuations thereof, and that it suffers inestimable damage by reason of the fact that it is difficult to find purchasers of its property due to the pendency of said proceeding; that the board of trustees of the Downers Grove Sanitary District has, while acting as such, officially gone on record as authorizing and ordering the dismissal of said proceeding and has provided for the construction of an improvement to be paid for by a general bond issue, the improvement being intended and designed to supplant and take the place of the improvement provided for in the special assessment proceeding, but that, due to neglect either on the part of the attorneys representing the district or due to a failure of the board of trustees to instruct the attorneys in accordance with its resolution for the dismissal of the proceeding, the proceeding has not been dismissed and is still on the calendar of this court. The prayer of the petitioner was "that the board of trustees of the Downers Grove Sanitary District be commanded by order of this court to show cause why the said special assessment proceeding should not be dismissed and stricken from the calendar of this court forthwith."

To this petition the trustees of the Downers Grove Sanitary District answered, admitting that special assessment No. 26 was filed on the 12th day of August, 1929; that nearly all of the property in the sanitary district was included in the assessment roll; neither admitted nor denied that the pendency of the special assessment proceeding constituted a cloud upon the title of the property but demanded strict proof thereof; admitted that the Downers Grove Investment Company, the petitioner, was the owner of six lots having a total assessment of $235.53, but denied that the petitioner was put to great expense in purchasing abstracts and continuations thereof and demanded strict proof thereof. The answer denied that the board of trustees had officially gone on record as ordering the dismissal of the special assessment proceeding then pending, but stated that on June 29,

1929, the then members of the board of trustees whose terms of office had expired prior thereto had adopted a resolution that the original resolution providing for special assessment No. 19 be rescinded, and adopted an ordinance repealing one theretofore adopted for special assessment No. 19; that on the same day the board held an adjourned meeting for the purpose of holding a public hearing regarding special assessment No. 26; that the purpose of the public hearing was to consider the extent, nature, kind, character and estimated cost of the proposed improvement, consisting of the construction of a sewage treatment works, with grit and screen chambers, preliminary settling tanks, æration tanks, final settling tanks, digestion tank, sludge drying beds, a service building, two outlet sewers, consisting of 24-inch and 36-inch lines of pipe, together with two intercepting chambers and an intercepting sewer, with all necessary appurtenances and equipment in and for the sanitary district, and that after such special meeting a resolution of adherence as to special assessment No. 26 was adopted; that proceeding No. 26 was similar in extent, nature, kind and character to the special assessment improvement known as special assessment No. 19; that the property owners, upon learning that the trustees intended to force through the improvement as heretofore described, objected to the same at the public hearing as being illegal, confiscatory and a fraud upon the property owners of the district; that there was public opposition to the actions and policies of the trustees; that public meetings were held, at which the property owners discussed the improvement and the conduct of the trustees; that the consensus of opinion at the meetings declared in favor of petitioning the county judge for the appointment of a new board of trustees; that between the repeal of the ordinance authorizing special assessment proceeding No. 19 on the 29th day of July, 1929, and the filing of the petition for special assessment proceeding No. 26 on the 12th day of August, 1929, the citizens of the sani-

tary district conferred with the county judge to have other trustees appointed who would consider the rights of a majority of the property owners; that all of the foregoing facts were well known to the trustees, but they continued to foist upon the property owners assessment No. 26; that pursuant to public demand the county judge caused notice of a special election to be published in the *Downers Grove Reporter* on September 13 and September 20, 1929, asking the citizens of the sanitary district to nominate, by petition, candidates for trustees of the sanitary district, inasmuch as the term of office of each of the trustees had expired; that the purpose of the election was expressed by the judge in the notice as follows: "In the matter of the appointment of these trustees I wish to have the approval of a majority of the electors of the district;" that pursuant to the notice, nominations were duly filed with the clerk of the county court; that the main issue at the election was whether or not the improvement should be forced upon the property owners contrary to their wishes, as by the trustees was being attempted; that three parties entered the field: the People's ticket, pledging themselves to respect the wishes of a majority of the citizens of the district; the Independent ticket, which made no particular pledges; and the Progressive ticket, which sought the approval of the people for the action of the trustees then in office, two of the members of the Progressive ticket seeking re-appointment; that the election of candidates was held on October 5, 1929, and resulted in the election of the present board, being on the People's ticket; that three days after the election the then board, at a special meeting called for the purpose, allowed bills amounting to over $36,500 for services in connection with assessment proceeding No. 19, among which was an item of $9500 for attorney's fees to Bunge, Groetefeld & Bunge, the present attorneys for appellee, and George B. Foster; that the present trustees, neither individually nor as a board, took any part in the

origination or the filing in court of special assessment proceeding No. 26; that upon entering the duties of their office they gave serious consideration to the disposition of said special assessment proceeding; that as trustees of the district they are responsible to the property owners for the expenditure of funds and the creation of any liabilities; that the statutes and the law of the State of Illinois require a strict accountability of their trust, and any palpable omission of duty subjects them to punishment under the Criminal Code; that by reason of these circumstances they have been diligent in investigating the action of the prior board of trustees and of its power to enact a proceeding of the extent, nature, kind and character as is described in special assessment proceeding No. 26. The answer then stated facts, based on said investigation, tending to show that the action of the board of trustees in passing the ordinance for special assessment No. 26 was *ultra vires,* unnecessary, unreasonable, oppressive, arbitrary and void, and that the annual cost of operating the plant would exceed the annual income which the district was authorized to derive from the levy and collection of taxes for corporate purposes; that in 1929 the assessed valuation for tax purposes was $6,883,220, so that the maximum tax which could be collected would be $22,944; that the necessary expenditures for power, labor and repairs for the plant proposed in special assessment proceeding No. 26 are conservatively estimated to be between $25,000 and $35,000, annually.

On motion of appellee all the portions of the answer mentioned in the above paragraph were stricken as scandalous and impertinent. By the last clause of the answer appellant asked that the court "hear and determine the legality of the proceeding and take such further action as it shall deem proper and just." After these portions of the answer had been stricken, the attorney for appellant stated that he was willing to stand on the remainder of the answer. Thereupon the court, without hearing any evidence

as to the issues or the merits of appellee's petition, ordered that the prayer be granted and special assessment proceeding No. 26 be dismissed. From this order appellant has appealed to this court.

Even if the court was correct in striking portions of appellant's answer and appellant had been in default for want of an answer, which it was not, it was incumbent upon appellee to show by evidence that the facts stated in its petition were true and that it was entitled to the relief sought.

Appellant contends that the court erred in striking from the answer the matters claimed to be scandalous and impertinent. Just wherein the matters stricken were scandalous and impertinent does not appear from appellee's motion to strike or the court's order and is in nowise pointed out in appellee's brief and argument. Assessment proceeding No. 26 was instituted in behalf of appellant by its regularly constituted officers, and, being so instituted, the duty of its conduct, management and prosecution on behalf of appellant devolved on the present trustees upon their appointment. Their answer showed that they had not abandoned the proceeding, as alleged in appellee's petition, but set forth their investigation and its results. The duty of prosecuting the proceeding, and likewise the duty of conserving the interests of the tax-payers, devolved upon the present trustees. They had a right to have an adjudication by the court as to whether their duty required them to proceed further in the matter or whether the proceeding was void *ab initio,* as a matter of protection to themselves and the tax-payers of the district. While the answer contained some unnecessary matter, it was sufficient to show that the trustees were not derelict in their duty by abandoning the proceeding and required an adjudication by the court as to the merits of the proceeding.

The final order appealed from is reversed and the cause remanded.

*Reversed and remanded.*